**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MARCIE ABERMAN, CHARLES DVORAK,
MEGAN OHLRICH, SHARON REIF,
PATRICK SHERLOCK, on behalf of
themselves and all others similarly situated,

                         Plaintiff,

     v.

CONTINENTAL AKTIENGESELLSCHAFT;
CONTINENTAL TIRE THE AMERICAS,
LLC; COMPAGNIE GÉNÉRALE DES
ÉTABLISSEMENTS; MICHELIN NORTH
AMERICA, INC.; NOKIAN TYRES PLC;
NOKIAN TYRES INC; NOKIAN TYRES U.S.
HOLDINGS, INC.; NOKIAN TYRES U.S.
OPERATIONS LLC; THE GOODYEAR TIRE
& RUBBER COMPANY; PIRELLI & C.
S.P.A.; PIRELLI TIRE LLC; BRIDGESTONE
CORPORATION; BRIDGESTONE
AMERICAS, INC.; AND DOES 1-100,

                        Defendants.

---

Case No. 5:24-cv-02923

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................. 1

II.     JURISDICTION AND VENUE .......................................................... 2

III.    PARTIES ............................................................................................. 3

       A.    Plaintiff ..................................................................................... 3

       B.    Defendants ............................................................................... 4

IV.    AGENTS AND CO-CONSPIRATORS .......................................... 10

V.     FACTUAL ALLEGATIONS ............................................................ 10

       A.    Tire Market ............................................................................ 10

       B.    Defendants' Role in the Tire Market ................................... 11

       C.    Dramatic Increases in the Price of Tires ............................ 13

       D.    The Only Explanation for Price Increases is a Price-Fixing
           Agreement ............................................................................. 18

       E.    Defendants' Previous Antitrust Violations .......................... 19

VI.    INTERSTATE COMMERCE AND ANTITRUST INJURY ....................................... 20

VII.   CLASS ACTION ALLEGATIONS ................................................ 21

VIII.  TOLLING OF THE STATUTES OF LIMITATIONS ................................. 23

IX.    CLAIMS FOR RELIEF .................................................................... 24

       A.    COUNT ONE – VIOLATION OF THE SHERMAN ACT, 15
           U.S.C. § 1, 3 – DECLARATORY AND INJUNCTIVE RELIEF .................... 24

       B.    COUNT TWO – VIOLATION OF STATE ANTITRUST LAWS ................. 25

       C.    COUNT THREE – VIOLATION OF STATE CONSUMER
           PROTECTION ACTS ........................................................... 28

           1.    Colorado ................................................................... 28

2.    Florida ................................................................................................ 29

3.    Illinois ............................................................................................... 30

4.    Michigan ............................................................................................ 31

X.    PRAYER FOR RELIEF ................................................................................ 33

XI.    JURY TRIAL DEMANDED ........................................................................... 33

Plaintiffs Marcie Aberman, Charles Dvorak, Megan Ohlrich, Sharon Reif, and Patrick Sherlock, on behalf of themselves and all others similarly situated, bring this suit for damages and injunctive relief based upon personal knowledge as to the facts pertaining to themselves, and upon information and belief as to the facts pertaining to others, as well as upon investigation of counsel, against named Defendants Continental Aktiengesellschaft; Continental Tire the Americas, LLC; Compagnie Générale des Établissements; Bridgestone Corporation; Bridgestone Americas, Inc.; Michelin North America, Inc.; Nokian Tyres plc; Nokian Tyres Inc; Nokian Tyres U.S. Holdings Inc.; Nokian Tyres U.S. Operations LLC; The Goodyear Tire & Rubber Company; Pirelli & C. S.p.A.; Pirelli Tire LLC; and unidentified Doe Defendants (collectively, "Defendants") for violations of Sections 1 and 3 of the Sherman Act (15 U.S.C. § 1, 3) and various state antitrust and consumer protection laws.

## I.    INTRODUCTION

1.    Tires are expensive, and they have been getting more expensive each year. A lot more expensive. The average price of tires rose over 21% from 2021 to 2023. That is more than 70% higher than overall inflation over the same period. The price increases do not reflect costs or limited supply, but Defendants' unlawful horizontal price-fixing agreement to set the prices of new replacement tires for passenger cars, vans, trucks, and buses ("Tires") sold in the United States.

2.    Defendants' conspiracy in the United States is out of the same playbook they use globally. This January, the European Commission ("EC") raided "companies active in the tyres industry in several Member States," based on "concern that price coordination took place amongst

the inspected companies" and violation of "antitrust rules that prohibit cartels and restrictive business practices."[1]

3.      The Tires market in the United States is highly concentrated with high barriers to entry, and there is no substitute for Tires, although within the market, many products are interchangeable. This made it both feasible and desirable for Defendants to conspire with each other to fix the price of Tires, which they did through sudden and dramatic price increases that would not have been economically rational in the absence of such a conspiracy. The EC's raids further support such a conspiracy's existence.

4.      Plaintiffs and the Classes purchased Tires at supracompetitive prices, suffering injury to their business or property, as a direct result of Defendants' unlawful conspiracy in violation of Sections 1 and 3 of the Sherman Act.

5.      Plaintiffs, on behalf of themselves and the Classes, seek to recover treble damages, injunctive relief, and other relief as is appropriate, based on Defendants' violation of federal antitrust laws and state antitrust and consumer protection laws. Plaintiffs demand a trial by jury.

## II.      JURISDICTION AND VENUE

6.      Plaintiffs bring this action under 15 U.S.C. § 26 for relief as is afforded for the injury that Defendants' violations of 15 U.S.C. § 1 caused.

7.      The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332(d), 1337(a), and 1367 as well as Section 16 of the Clayton Act, 15 U.S.C. § 26.

8.      This Court has personal jurisdiction over Defendants because they transacted business in the United States, including in this District; directly or indirectly sold or marketed Tires in the United States, including in this District; had substantial aggregate contacts with the United

---

[1] *Commission carries out unannounced antitrust inspections in the tyres sector*, European Commission (Jan. 30, 2024), https://ec.europa.eu/commission/presscorner/detail/en/ip_24_561.

States, including with this District; and/or engaged in an illegal antitrust conspiracy that was intended to and did have a direct, substantial, and reasonably foreseeable effect causing injury to the business or property of persons and entities residing in the United States, including in this District. Defendants purposefully availed themselves of the laws of this District.

9. Venue is proper in this district under 28 U.S.C. §§ 1391(a), (b), (c), and (d), and section 12 of the Clayton Act (15 U.S.C. § 22). A substantial part of the events giving rise to the claims occurred in this District, a substantial portion of the affected interstate trade and commerce at issue has been carried out in this district, and/or one or more of the Defendants are licensed to do business in, are doing business in, had agents in, or are found or transact business in this District. In particular, Defendant Michelin North America, Inc. at all relevant times was incorporated under the laws of the State of New York.

10. Defendants' conduct alleged herein was within the flow of interstate commerce, including in this District, and was intended to and did have a direct, substantial, and reasonably foreseeable effect upon interstate commerce.

### III.    PARTIES

**A.    Plaintiff**

11. Plaintiff Marcie Aberman is a resident of the Wheeling, Illinois. In June 2021, Plaintiff purchased four 205/65R16 Firestone All Season Tires from Firestone Complete Auto Care in Arlington Heights, Illinois for $100.69 each.

12. Plaintiff Charles Dvorak is a resident of Addison, Illinois. In July 2020, Plaintiff bought four 245/40R18 Yokohama Advan A052 XL Tires from Tire Rack for $227.07 each. In May 2022, Plaintiff bought four 225/45R17 Bridgestone Potenza RE-71RS Tires from Tire Rack for $238.94 each. In November 2022, Plaintiff bought two 225/65R17 Cooper Endeavor Plus Tires from Tire Rack for $144.99 each. In March 2023, Plaintiff bought four 225/45R17 Bridgestone

Potenza RE-71RS Tires from Tire Rack for $243.45 each. In May 2023, Plaintiff bought four 225/45R17 Bridgestone Potenza RE-71RS Tires from Tire Rack for $243.45 each. In March 2024, Plaintiff bought four 245/45R-17 Bridgestone Potenza RE-71RS SL Tires from Tire Rack for $258.73 each.

13.     Plaintiff Megan Ohlrich is a resident of Saginaw, Michigan. In June 2021, Plaintiff purchased four 185/55R15 Goodyear Integrity tires from Morehart Murphy Auto Center in Durango, Colorado for $118.49 each.

14.     Plaintiff Sharon Reif is a resident of Winneconne, Wisconsin. In February 2024, Plaintiff purchased four 205/55R16 91H BSW Michelin Defender 2 All Season Tires from Costco for a total of $727.92.

15.     Plaintiff Patrick Sherlock is a resident of Tamarac, Florida. In March 2021, Plaintiff purchased two 205/70R15 98S Goodyear All Season Tires from Amazon for $63.21 each. In April 2021, Plaintiff purchased three 205/70R15 98S Goodyear All Season Tires from Amazon for $63.21 each. In October 2021, Plaintiff purchased two 205/70R15 98S Goodyear All Season Tires from Amazon for $77.29 each.

**B.     Defendants**

16.     **Continental**

- **Continental Aktiengesellschaft** ("Continental AG)," is a German company with its headquarters at Vahrenwalder Strasse 9, 30165 Hannover, Germany. Continental AG divides its business into four groups: Automotive, Tires, ContiTech, and Contract Manufacturing.[2] In 2023, Continental AG's Tires group

---

[2] *Preliminary Consolidated Financial Statements 2023*, Continental Group https://cdn.continental.com/fileadmin/__imported/sites/corporate/_international/english/hubpages/30_20investors/30_20reports/annual_20reports/2023_fact_sheet_en.pdf.

achieved a 13.5% EBIT margin, reporting over €14 billion globally,[3] and has over 56,000 employees.

- **Continental Tire The Americas, LLC** ("Continental U.S."), is a limited liability company incorporated under the laws of Ohio, with its principal place of business at 1830 MacMillian Park Drive, Fort Mill, SC 29707. Continental U.S. "manufactures and distributes a complete premium line of passenger, light truck and commercial tires for original equipment and replacement markets."[4] The Fort Mill headquarters is the "operational hub" oversees all tire product lines.[5] Continental U.S. has manufacturing facilities in Barnesville, Georgia; Mt. Vernon, Illinois; Sumter, South Carolina; and Clinton, Mississippi.[6] Continental US sells its tires through independent tire dealers, car dealers, and mass retail companies across North America.

17.    **Michelin**

- **Compagnie Générale des Établissements ("The Michelin Group")** is a French company with its principal place of business at 23 place des Carmes-Déchaux, 63000 Clermont-Ferrand, France. It is the parent company of the Michelin Group, which directly or indirectly owns all of its subsidiaries.[7] The main French subsidiary

---

[3] *Id.*

[4] *Members, Continental*, U.S. Tire Manufacturers Ass'n, https://www.ustires.org/continental-tire-americas-llc (last visited Apr. 10, 2024).

[5] *Our Locations, Fort Mill, SC*, Continental, https://www.continental.com/en-us/career/our-locations/fort-mill/ (last visited Apr. 10, 2024).

[6] *Id.*

[7] *2022 Universal Registration Document,* Michelin, https://agngnconpm.cloudimg.io/v7/https:/dgaddcosprod.blob.core.windows.net/corporate-production/attachments/clktdcbbu09gq2fhhcs221myq-michelin-deu-2022-us-mel-v2.pdf  (last visited Apr. 12, 2024)

is Manufacture Française des Pneumatiques Michelin ("MFPM"), which is wholly owned and engages in manufacturing, sales, and research and development activities,[8] while a second wholly owned subsidiary, Compagnie Financière Michelin ("CFM"), owns and coordinates the operations of most of the Michelin Group's manufacturing, sales and research companies outside of France.[9]

- **Michelin North America, Inc.,** is a New York corporation and its principal place of business is at One Parkway South, Greenville, SC 29615-5022. Michelin North America, Inc. has 40 facilities in the United States, of which about 30 are manufacturing plants.[10] It has about 23,000 employees in the United States and Canada.[11] Michelin North America Inc. designs, manufactures, and sells tires.[12] Michelin is one of the leading manufacturers of tires in the United States. In 2022, Michelin had €10.92 billion in sales, 80% of which were generated in the United States.[13] Michelin employs 23,000 people in the United States and Canada.[14] Michelin has manufacturing facilities in, *inter alia*, Alabama (light trucks and passenger tires), Indiana (car tires), Oklahoma (passenger tires), and South Carolina (passenger tires and truck and bus tires).

---

[8] *Id.* at 126.

[9] *Id.* at 403.

[10] *North America Fact Sheet*, Michelin, https://michelinmedia.com/mna-fact-sheet/ (last visited Apr. 10, 2024).

[11] *Id.*

[12] *Members, Michelin*, U.S. Tire Manufacturers Ass'n, https://www.ustires.org/michelin-north-america-inc (last visited Apr. 10, 2024).

[13] Michelin, s*upra* note 7 at 14.

[14] *Overview*, Michelin North America, Inc., https://michelinmedia.com/site/user/files/1/MNA-Fact-Sheet-2023_2.pdf (last visited Apr. 10, 2024).

18.    **Nokian**

- **Nokian Tyres plc** is a Finnish company with its principal place of business at Pirkkalaistie 7, P.O. Box 20, 37101 Nokia, Finland. Nokian Tyres plc develops and manufactures passenger car, truck, and heavy machinery tires. Nokian Tyres plc is the parent company of the Nokian Tyres Group, which has subsidiaries worldwide.[15] In 2023, the company's net sales were €1.2 billion, 23% of which were in the Americas.[16]

- **Nokian Tyres U.S. Holdings Inc.** is a Delaware company with a principal place of business is at 520 Nokian Tyres Drive, Dayton, Tennessee 37321. It is a wholly owned subsidiary of Nokian Tyres plc.

- **Nokian Tyres Inc.** is a Delaware corporation. Its principal place of business is at 520 Nokian Tyres Drive, Dayton, Tennessee 37321. It is a fully owned subsidiary of Nokian Tyres U.S. Holdings Inc., and an indirect subsidiary of Nokian Tyres plc.

- **Nokian Tyres U.S. Operations LLC** is a Tennessee limited liability company with a principal place of business is at 520 Nokian Tyres Drive, Dayton, Tennessee 37321. is a fully owned subsidiary of Nokian Tyres Holdings Inc.

19.    **Goodyear**

- **The Goodyear Tire & Rubber Company** is an Ohio corporation with its principal place of business at 200 Innovation Way Akron, Ohio 44316-0001. Goodyear

---

[15] *Corporate Governance*, Nokian Tyres, https://www.nokiantyres.com/company/investors/corporate-governance/ (last visited Apr. 10, 2024).

[16] *Annual Report 2023,* Nokian Tyres, https://nokiantyres.studio.crasman.cloud/pub/web/attachments/publications/Nokian_Tyres_Annual_Report_2023.pdf?d=inline (last visited Apr. 12, 2024)

develops, manufactures, markets and distributes tires, and it manufactures and markets rubber-related chemicals.[17] Goodyear manufactures and sells under the Goodyear, Cooper, Dunlop, Kelly, Mastercraft, Roadmaster, Debica, Sava, Fulda, Mickey Thompson, Avon, and Remington brands.[18] Goodyear sells its products to consumer and commercial customers through its network of dealers, retail outlets and truck centers, and wholesale distributors.[19] Its net sales were over $20 million in 2023, and 86% of those sales were tire units.

20.    **Pirelli**

- **Pirelli & C. S.p.A.** is organized under the laws of Italy with its principal place of business at Via Bicocca degli Arcimboldi, 3, 20126 Milano, Italy. Pirelli designs, manufactures, and distributes tires for cars, motorcycles, and bicycles. In 2022, it had revenues of €6.6 million and 31,300 employees.[20]

- **Pirelli Tire LLC** is a limited liability company organized under the laws of Delaware with its principal place of business located at 100 Pirelli Drive Rome, Georgia, 30161. The company manufactures, distributes, and markets original equipment and replacement tires for export and domestic car/motorcycle applications. It has offices in New York City, Los Angeles, Detroit, and Atlanta, as well as a flagship store in Los Angeles.

---

[17] *2023 Annual Report*, Goodyear, https://corporate.goodyear.com/content/dam/goodyear-corp/documents/annualreports/2023%20annual%20report.pdf (last visited Apr. 10, 2024).
[18] *Id.*
[19] *Id.*
[20] Report on the Corporate Governance and Share Ownership of Pirelli & C.S.P.A. (2022), https://corporate.pirelli.com/var/files2022/EN/PDF/03_REPORT_CORPORATE_GOVERNANCE_SHARE_OWNERSHIP/03_REPORT_CORPORATE_GOVERNANCE_SHARE_OWNERSHIP.pdf.

21.   **Bridgestone**

- **Bridgestone Corporation** is organized under the laws of Japan with its principal place of business at 1-1, Kyobashi 3-chome, Chuo-ku, Tokyo 104-8340. Bridgestone Corporation is the parent corporation of the Bridgestone Group (the "Group"), which refers to all Group companies, which includes the following Strategic Business Units: Bridgestone Americas ("BSAM"), which includes the United States, Canada, Latin America, the Caribbean, and Libera; Bridgestone China, Asia Pacific; Bridgestone Europe, Russia, Middle East, India, and Africa; and Bridgestone Japan ("BSJP").[21] BSAM is the largest Strategic Business Unit by revenue, tire production volume, and number of employees.

- **Bridgestone Americas, Inc. ("BSAM")** is incorporated under the laws of Nevada with its principal place of business at 200 4th Ave, Suite 100, Nashville, Tennessee, 37201-2256. BSAM and its subsidiaries develop, manufacture, and market a wide range of Bridgestone, Firestone, and associate brand tires for consumers, automotive and commercial vehicle original equipment manufacturers, and those in the agricultural, forestry and mining industries.[22] BSAM has U.S. manufacturing facilities in Arkansas, Georgia, Iowa, Illinois, North Carolina, Ohio, South Carolina, Tennessee, and Texas.[23]

22.   **DOE Defendants** 1–100 are other individuals or entities who engaged in or

---

[21] *Bridgestone 3.0 Journey, 2023 Integrated Report* 3, Bridgestone Corporation (June 2023), https://www.bridgestone.com/ir/library/integrated_report/pdf/2023/ir2023_single.pdf.

[22] *Members, Bridgestone*, U.S. Tire Manufacturers Ass'n, https://www.ustires.org/bridgestone-americas-inc (last visited Apr. 10, 2024).

[23] *Id.*

abetted the unlawful conduct by Defendants set forth in this Complaint. Plaintiffs may amend this Complaint to allege the names of additional Defendants as they are discovered.

## IV.    AGENTS AND CO-CONSPIRATORS

23.    Various persons and/or firms not named as defendants herein have participated as co-conspirators in Defendants' unlawful antitrust conspiracy and have performed acts and made statements in furtherance of the conspiracy. Defendants are jointly and severally liable for the acts of their co-conspirators whether named as defendants in this action or not.

24.    Each Defendant acted as the agent or joint venturer of or for other Defendants with regard to the acts, violations, and common course of conduct alleged herein.

## V.    FACTUAL ALLEGATIONS

### A.    Tire Market

25.    There are millions of passenger cars, vans, trucks, and buses in the United States, and they all need tires. Brand new vehicles come with new original equipment, or OE, tires, but tires need to be replaced as they wear out. Consumers therefore need to buy replacement tires. The market for replacement tires in the United States in 2022 was worth $61 billion.

26.    Making tires is a complex process. Tires for passenger vehicles and light trucks contain about 20% natural rubber in addition to synthetic polymers, steel, textiles, fillers, antioxidants, antiozonants, and curing systems. Machinery and computer-controlled mixing processes handle the raw materials, which are sent to other machines for further processing and assembly. The final step is curing, in which the tire is placed in a mold and inflated to form tread, then heated at more than 300 degrees for 12-15 minutes.

27.    The process requires raw materials, machinery, and manufacturing at large scale. That doesn't include the resources and equipment necessary to ship Tires—large, relatively heavy objects—after the initial hurdle of producing them. These represent significant barriers to entry in

the market. High barriers to entry minimize the threat of a new party entering the market, making the market more susceptible to collusion.

28.    While there are different types, sizes, load and speed capacities, Tires with the same specifications are generally interchangeable. Defendants make Tires suitable for each specification, and any Defendant's Tire may be used for nearly any given specification. Under normal circumstances, the primary way to compete in a market with interchangeable products is to compete on price.

29.    Furthermore, there are no alternative products that compete with Tires. Consumers cannot substitute something else for Tires. A consumer cannot, for example, buy raw materials and make their own Tires at home. The inelastic demand creates more opportunity for collusion because consumers will continue to pay high prices. If they are unhappy with price increases, they cannot simply choose to buy less of that good—that is, consumers cannot discipline the market. Or, as Bridgestone Americas Inc. COO Scott Damon put it, "…despite the price increases and inflation, demand still remains quite strong."[24]

## B.    Defendants' Role in the Tire Market

30.    A small number of firms dominate the Tire market. Three firms, Bridgestone (which encompasses Bridgestone and Firestone), Michelin (which encompasses Michelin, BF Goodrich, and Uniroyal), and Goodyear (which encompasses Goodyear, Cooper Tires, Dunlop, and Kelly), account for roughly two-thirds of the market.[25] Continental, Nokian, and Pirelli also

---

[24] *Rising tire prices affected by several factors*, Tire Business (July 8, 2022, 2:44 PM), https://www.tirebusiness.com/news/rising-tire-prices-affected-several-factors.

[25] Ashley Jefferson, *The 'Goliaths' of the Replacement Tire Industry Are Getting Bigger. How Can The 'Davids' Compete?*, Traqline (Feb. 14, 2022), https://www.traqline.com/newsroom/blog/the-goliaths-of-the-replacement-tire-industry-are-getting-bigger-how-can-the-davids-compete/.

enjoy the benefits of being established companies with multinational reach, relationships with suppliers and buyers, and significant resources.

31.    The structure of the Tire market and Defendants' role in it gave them ample opportunity for collusion and collusive communication. Not only does the concentrated market make it easy to identify contacts, but Defendants also interact with each other in industry roles. For example, the U.S. Tire Manufacturers Association ("USTMA") is a national trade association for tire manufacturers that produce tires in the United States, and Defendants' officers serve on the Board of Directors. **Michelin North America, Inc.** Chairman Alexis Garcin is USTMA Chairman and other USTMA board members include **Bridgestone Americas, Inc.** CEO, Paolo Ferrari, and Vice President of Government and Regulatory Affairs and General Counsel, Alan Yarcusko; **Continental Tire the Americas, LLC** CEO, Jochen Etzel; **Goodyear Tire & Rubber Company's** Vice President of Americas Product Development, David Reese; **Michelin North America, Inc.'s** Vice President of Public Affairs, David K. Chapman; **Nokian Tyres North America's** Vice President of North America, Tommi Heinonen; and **Pirelli Tire North America**'s President and CEO, Claudio Zanardo.

32.    The Tire Society, the Tire and Rime Association, Inc., and the Tire Industry Association are also organizations and associations of which Defendants and members and/or committee members, and they also hold regular industry-wide events that Defendants attend and sponsor.

33.    Collusive communication can occur in public communications like earnings calls, speeches in industry conferences, price announcements, press releases, and public communications.

## C.    Dramatic Increases in the Price of Tires

34.    Starting in early 2021, Defendants implemented lockstep price increases that dramatically raised the price of Tires in the United States.

| Effective Date | Defendant | Price Increase |
|---|---|---|
| February 1, 2021 | Michelin | Up to 5% |
| March 1, 2021 | Continental | Undisclosed |
| April 1, 2021 | Michelin | Up to 8% |
| April 1, 2021 | Goodyear | Up to 8% |
| April 15, 2021 | Pirelli | Up to 7% |
| May 1, 2021 | Bridgestone | Up to 8% |
| June 1, 2021 | Goodyear | Up to 8% |
| July 1, 2021 | Michelin | Up to 6% |
| July 1, 2021 | Continental | Undisclosed |
| July 1, 2021 | Pirelli | Up to 6% |
| September 1, 2021 | Goodyear | Up to 8% |
| September 1, 2021 | Michelin | Up to 14% |
| October 1, 2021 | Continental | Undisclosed |
| October 1, 2021 | Pirelli | Up to 8% |
| January 1, 2022 | Michelin | Up to 12% |
| January 1, 2022 | Goodyear | Up to 12% |
| January 3, 2022 | Continental | Undisclosed |
| January 17, 2022 | Pirelli | Up to 10% |
| April 1, 2022 | Continental | Undisclosed |
| April 1, 2022 | Michelin | Up to 14% |
| April 1, 2022 | Bridgestone | Up to 10% |
| April 11, 2022 | Pirelli | Up to 10% |
| June 1, 2022 | Continental | Undisclosed |
| June 1, 2022 | Michelin | 5-12% |
| June 15, 2022 | Pirelli | Up to 10% |
| July 1, 2022 | Goodyear | Up to 10% |

| July 1, 2022 | Bridgestone | Up to 10% |
| October 1, 2022 | Bridgestone | Up to 9% |
| January 1, 2023 | Michelin | Up to 9% |
| January 1, 2023 | Bridgestone | Undisclosed |
| January 15, 2023 | Pirelli | Up to 10% |

35.     This was a marked contrast to the incrementally increasing yet stable price of Tires over the previous decade.[26]



36.     Michelin, Continental, Goodyear, Pirelli, and Bridgestone all raised prices in the first few months of 2021. Michelin raised them twice, first in February, citing "changing business dynamics of the U.S. market."[27] Continental announced an increase for an undisclosed amount, effective March 1. Then in April, Michelin, Goodyear, and Pirelli all raised prices up to 7 or 8%,

---

[26] *Producer Price Index by Industry: Tire Manufacturing, Except Retreading: Truck and Bus (Including Off-the-Highway) Pneumatic Tires*, FRED Economic Data, https://fred.stlouisfed.org/series/PCU32621132621103

[27] *Michelin Will Raise Consumer, Commercial Prices on Feb. 1*, Modern Tire Dealer (Dec. 19, 2020), https://www.moderntiredealer.com/topic-category/topics/article/11475158/michelin-will-raise-consumer-commercial-prices-on-feb-1-2020-12-19.

noting "changing business dynamics and rising costs of raw materials,"[28] "changing market dynamics in the industry,"[29] and "higher price of raw materials and changing market conditions,"[30] respectively. In May, Bridgestone joined the others in a price increase of up to 8% due to "increased business costs and other market dynamics."[31]

37.    The next wave of price increases took place in the summer of 2021. Goodyear announced price increases of up to 8% effective June 1, recycling the language from its spring price increases noting "changing market dynamics in the industry."[32] Michelin, Pirelli, and Continental followed. Michelin and Pirelli increased prices up to 6%[33,34] and Continental increased prices an undisclosed amount, all effective July 1, 2021.

---

[28] *Michelin Will Raise Consumer Tire Prices on April 1*, Modern Tire Dealer (Mar. 1, 2021), https://www.moderntiredealer.com/topic-category/topics/article/11473824/michelin-will-raise-consumer-tire-prices-on-april-1-2021-03-01.

[29] *Goodyear to Increase Consumer Tire Prices*, Modern Tire Dealer (Mar. 3, 2021), https://www.moderntiredealer.com/topics/industry-news/article/11473768/goodyear-to-increase-consumer-tire-prices-2021-03-03.

[30] *Pirelli Will Raise Prices in U.S. on April 15*, Modern Tire Dealer (Mar. 9, 2021), https://www.moderntiredealer.com/topic-category/topics/article/11473594/pirelli-will-raise-prices-in-us-on-april-15-2021-03-09.

[31] *Bridgestone to Raise Consumer Tire Prices on May 1*, Modern Tire Dealer (Mar. 24, 2021), https://www.moderntiredealer.com/site-placement/featured-stories/article/11473222/bridgestone-to-raise-consumer-tire-prices-on-may-1-2021-03-24.

[32] *Goodyear Plans Another Consumer Tire Price Hike*, Modern Tire Dealer (May 3, 2021), https://www.moderntiredealer.com/topics/industry-news/article/11472039/goodyear-plans-another-consumer-tire-price-hike.

[33] *Michelin Implements Price Increase Across Passenger Brands and Commercial Offers in North American Market*, Press Release, Michelin North America (May 17, 2021, 13:00 ET), https://www.prnewswire.com/news-releases/michelin-implements-price-increase-across-passenger-brands-and-commercial-offers-in-north-american-market-301292713.html.

[34] *Pirelli Plans Another Price Hike*, Modern Tire Dealer (May 18, 2021), https://www.moderntiredealer.com/topics/industry-news/article/11471596/pirelli-plans-another-price-hike.

38.     Michelin and Goodyear both increased prices, by up to 14% and up to 8% respectively, effective September 1, 2021.[35,36] Pirelli mirrored Goodyear, also raising prices up to 8% effective October 1, 2021, making its fourth price hike that year.[37] Continental raised prices, too, for an undisclosed amount, also effective October 1, 2021.[38]

39.     Supracompetitive price increases continued into 2022. Continental announced in November 2021 that it would increase prices effective January 3, 2022.[39] Michelin announced in December that it would increase prices up to 12% on select Michelin, BFGoodrich, and Uniroyal passenger and light truck replacement tires effective January 1, 2022 "due to market dynamics."[40] Goodyear announced price increases of 12% effective January 1, 2022, as well.[41] In early January, Pirelli announced it would increase prices for car and light truck tires by up to 10% in the United States effective January 17, 2022. Pirelli cited "changing market conditions" for the hike.[42]

---

[35] *Goodyear and Cooper Consumer Tire Prices Are Going Up*, Ratchet + Wrench (Aug. 10, 2021), https://www.ratchetandwrench.com/topics/news/article/11463860/goodyear-and-cooper-consumer-tire-prices-are-going-up-modern-tire-dealer.

[36] *Michelin Implements Price Increase Across Passenger Brands and Commercial Offers in North American Market*, Michelin (Aug. 2, 2021), https://michelinmedia.com/pages/blog/detail/article/c/a1110/.

[37] *Pirelli raising prices for fourth time in 2021*, Rubber News (Aug. 31, 2021, 2:00 PM), https://www.rubbernews.com/tire/pirelli-raising-us-tire-prices-oct-1.

[38] Danielle Hess, *Continental Tire Announces Price Increase*, Tire Review (Aug. 30, 2021), https://www.tirereview.com/continental-tire-announces-price-increase/.

[39] Madeleine Winer, *Continental Tire Announces Price Increase*, Tire Review (Nov. 9, 2021), https://www.tirereview.com/continental-tire-announces-price-increase-2/.

[40] *Michelin Implements Price Increase Across Passenger Brands and Commercial Offers in North American Market*, Michelin (Dec. 1, 2021), https://michelinmedia.com/pages/blog/detail/article/c/a1139/.

[41] *Goodyear to raise North America tire prices July 1*, Tire Business (June 15, 2022, 10:26 AM), https://www.tirebusiness.com/news/goodyear-raise-north-america-tire-prices-july-1.

[42] Danielle Hess, *Pirelli Announces Price Increases for Car, Light Truck Tires*, Tire Review (Jan. 3, 2022), https://www.tirereview.com/pirelli-price-increases/.

40.     On March 1, 2022 Michelin announced another increase of up to 5% on passenger and light truck replacement tires, going into effect April 1, 2022.[43] The same day, Continental announced an undisclosed increase to go into effect at the same time.[44]

41.     The next day, Bridgestone announced it would increase prices up to 10% on non-winter Bridgestone, Firestone, and Fuzion passenger and light truck replacement tires in North America, effective April 1, 2022.[45]

42.     Pirelli followed a few weeks later, announcing price increases of up to 10% on car and light truck tires, once again due to "changing market conditions," effective April 11, 2022.[46]

43.     Soon after the April price increases went into effect, Defendants started announcing additional summer price hikes. On April 19, 2022, Continental announced another undisclosed price increase, the second in just two months, effective June 1, 2022.[47] A few weeks later, Michelin announced it would raise prices from 5-12%, with the same effective date of June 1, 2022.[48] Less than one week later, Pirelli announced it, too would increase prices again on U.S. car and light truck tires, effective June 15, 2022.[49] Once again, market conditions were to blame.

---

[43] *Michelin Implements Price Increase Across Passenger Brands and Commercial Offers in North American Market*, Michelin (Mar. 1, 2022), https://michelinmedia.com/pages/blog/detail/article/c/a1155/#:~:text=Tread%20rubber%20and%20associated%20supplies,2%2C%202022.

[44] Christian Hinton, *Continental Tire Announces Price Increase*, Tire Review (Mar. 1, 2022), https://www.tirereview.com/continental-tire-announces-price-increase-3/.

[45] Christian Hinton, *Bridgestone Price Increase for Consumer Replacement Tires*, Tire Review (Mar. 2, 2022), https://www.tirereview.com/bridgestone-price-increase-2/.

[46] Christian Hinton, *Pirelli Increases Price for Car and Light Truck Tires*, Tire Review (Mar. 23, 2022), https://www.tirereview.com/pirelli-increases-price-for-tires/.

[47] *Conti to raise U.S. tire prices again*, Tire Business (Apr. 19, 2022, 9:48 AM), https://www.tirebusiness.com/news/conti-raise-us-tire-prices-june-1.

[48] Christian Hinton, *Michelin to Implement Price Increases*, Tire Rev. (May 11, 2022), https://www.tirereview.com/michelin-price-increase/.

[49] Brian Coote, *Pirelli To Increase Prices on U.S. PLT Tires*, Tire Rev. (May 17, 2022), https://www.tirereview.com/pirelli-increase-prices-plt-tires/.

44.    As Bridgestone navigated "current market dynamics," it announced on June 6, 2022 that it would increase prices on consumer tires by up to 10% effective July 1, 2022.[50]

45.    A few days after, Goodyear matched Bridgestone with an up to 10% increase effective July 1, 2022. CFO Darren Wells pointed to rising raw materials and other inflation-impacted costs as reasons for the increase.[51]

46.    Bridgestone raised 2022 prices a final time, announcing in September that prices of passenger and light truck replacement tires sold in North America would increase up to 9% effective October 1, 2022.[52] Current market dynamics continued to be the reason.

47.    Defendants began to announce 2023 price increases in December 2022. Within two days, Pirelli, Michelin, and Bridgestone all announced they would raise prices of passenger and light truck tires effective January 1 or 15, 2023.[53,54,55] Pirelli and Michelin raised prices up to 10 and 9%, respectively, while Bridgestone did not disclose the amount of its increase.

**D.    The Only Explanation for Price Increases Is a Price-Fixing Agreement**

48.    Inflation and supply chain issues do not explain the price increases. During the COVID-19 pandemic, supply chain issues occurred, some costs increased, and inflation subsequently increased. But that doesn't account for the price increases in question. The average

---

[50] Brian Coote, *Bridgestone to Increase Consumer Tire Prices in U.S., Canada*, Tire Rev. (June 6, 2022), https://www.tirereview.com/bridgestone-increase-prices/.

[51] *Goodyear to raise North America tire prices July 1*, Tire Bus. (June 15, 2022), https://www.tirebusiness.com/news/goodyear-raise-north-america-tire-prices-july-1.

[52] Christian Hinton, *Bridgestone Announces Price Increase up to 15% on Select Tires*, Tire Rev. (Sept, 8, 2022), https://www.tirereview.com/bridgestone-price-increase-3/.

[53] Samuel Grom, *Pirelli to Increase Prices for Car and Light Truck Tires*, Tire Rev. (Dec. 12, 2022), https://www.tirereview.com/pirelli-increase-prices-tires/.

[54] Samuel Grom, *Michelin Introduces Price Increases in Canada, U.S.*, Tire Rev. (Dec. 13, 2022), https://www.tirereview.com/michelin-price-increases/.

[55] Samuel Grom, *Bridgestone Americas Increases Replacement Tire Prices*, Tire Rev. (Dec. 13, 2022), https://www.tirereview.com/bridgestone-americas-increased-prices/.

price of tires rose 21.4% from 2021-2023, which was more than 70% higher than core inflation.[56] As for supply chain issues, Goodyear's CFO stated on an earnings call, "Our increase in the replacement tire prices more than offsets our costs."[57]

49.    Plus, Defendants have had plenty of inventory; supply has remained high. Retailers complain about having too much inventory and not enough warehouse space, and Defendants have lowered production levels. As Bridgestone Americas Inc. explained, "Even with [] lower production levels, we still have huge amounts of inventory—more than our warehouse can handle."[58]

50.    In a normal market under competitive conditions, surplus supply and decreasing costs would lead to lower prices. But Tire prices remain at an all-time high.

## E.    Defendants' Previous Antitrust Violations

51.    On January 30, 2024, the EC announced that it had raided tire manufacturers in several European Union countries. The EC enforces antitrust rules and had concerns that the companies it inspected violated EU rules prohibiting cartels and restrictive business practices.[59] Specifically, the EC was concerned that the companies engaged in price coordination, including via public communications, for new replacement tires for passenger cars, vans, trucks, and buses

---

[56] Michael Grabell, *Overinflated: The Journey of a Humble Tire Reveals Why Prices Are Still So High*, Pro Publica Inc. (May 3, 2023), https://www.propublica.org/article/inflation-tires-rubber-imports-high-prices.

[57] *Id.*

[58] Joy Kopcha, *Do Tire Tiers Exist, and Are They Competitive?*, Mod. Tire Dealer (Nov. 7, 2023), https://www.moderntiredealer.com/suppliers/article/33014539/do-tire-tiers-exist-and-are-they-competitive.

[59] *Press Release: Commission carries out unannounced antitrust inspections in the tyres sector*, European Comm'n (Jan. 30, 2024), https://ec.europa.eu/commission/presscorner/detail/en/ip_24_561.

in the European Economic Area.[60] Goodyear, Pirelli, Bridgestone, Michelin, Nokian, and Continental all confirmed that the EC raided their offices.[61] But this conduct was nothing new.

52.    In addition to the recent EC investigations, South Africa's competition enforcement conducted search and seizure operations at Bridgestone, Dunlop, and the South African Tyre Manufacturers' Conference in 2008.[62] It ultimately fined Goodyear and Continental, while Bridgestone South Africa (Pty) Ltd. received conditional immunity after filing a leniency petition.[63] And in 2009, the California Attorney General also recovered more than $23 million in settlements with Bridgestone, Continental, and 50 other automotive suppliers for violations of the antitrust laws.[64]

## VI.    INTERSTATE COMMERCE AND ANTITRUST INJURY

53.    Defendants' conspiracy had a direct, substantial, and foreseeable impact on interstate trade and commerce and caused antitrust injury to Plaintiffs and the Class.

54.    Tire sales generate billions of dollars each year in interstate commerce in the United States, and payment for those transactions flow in interstate commerce.

55.    Defendants combined, conspired, and/or agreed to fix, maintain, stabilize and/or artificially inflate the prices for Tires in the United States. Defendants' conspiracy to fix the prices

---

[60] *Id.*

[61] Francesca McClimont, *EU raids world's biggest tyre companies*, Glob. Competition Rev. (Jan. 30, 2024), https://globalcompetitionreview.com/article/eu-raids-worlds-biggest-tyre-companies.

[62] Brian Jennings, *Tyresome collusion: tribunal hearing into alleged tyre cartel*, IR Glob. (Mar. 29, 2022), https://irglobal.com/article/tyresome-collusion-tribunal-hearing-into-alleged-tyre-cartel/.

[63] Melissa Lipman, *S. Africa Targets Goodyear, Others In Tire Cartel Case*, Law360 (Sept. 8, 2010), https://www.law360.com/articles/192122.

[64] Chris Anthony, *Tyremakers among 52 automotive suppliers in US$23 million antitrust settlement*, Tyrepress (Dec. 6, 2019), https://www.tyrepress.com/2019/12/tyremakers-among-52-automotive-suppliers-in-us23-million-antitrust-settlement/.

of Tires sold in the United States had a direct and adverse impact on competition, preventing a competitive market from determining price for Tires.

56.     Plaintiffs and the Classes sustained injury to their business or property as a direct result of Defendants' unlawful conspiracy. But for Defendants' conspiracy, Plaintiffs and the Classes paid higher prices for Tires.

## VII.    CLASS ACTION ALLEGATIONS

57.     Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), Plaintiffs bring this action on behalf of themselves and as a class action on behalf of the following Injunctive Relief Class, Damages Class, and CPA Class:

> **Injunctive Relief Class**: All persons and entities that purchased Tires, for use and not resale, directly or indirectly, from any Defendant from January 1, 2020 until the time the adverse effects of Defendants' anticompetitive conduct ceases.

> **Damages Class**: All persons and entities that purchased Tires, for use and not resale, indirectly from any Defendant within a state or territory of the United States whose laws permit an indirect purchaser to pursue a claim for damages for anticompetitive conduct, from January 1, 2020, until the time the adverse effects of Defendants' anticompetitive conduct ceases.[65]

> **CPA Class**: All persons and entities that purchased Tires in one of the CPA States,[66] for use and not resale, indirectly from any Defendant from January 1, 2020 until the time the adverse effects of Defendants' anticompetitive conduct ceases.[67]

58.     Excluded from the Classes (and, in the alternative, subclasses) are Defendants and their employees, affiliates, parents, subsidiaries, officers, directors, management, or agents, as well

---

[65] In the alternative, Plaintiffs bring this case on behalf of themselves and an Antitrust Subclass, defined as follows:  All persons and entities in the Indirect Purchaser States (defined in Count 2 below) that purchased Tires, for use and not resale, indirectly from any Defendant from January 1, 2020 until the time the adverse effects of Defendants' anticompetitive conduct cease.

[66] The "CPA States" are the states identified in Count 3 below.

[67] In the alternative, Plaintiffs bring this case on behalf of themselves and subclasses for each CPA State.

as federal governmental entities, judges and chambers staff in this case as well as any of their immediate family members, and all jurors assigned to this case.

59.    Joinder of all Class Members is impracticable. Although the precise number of Class Members is presently unknown, Defendants have sold millions of Tires at inflated prices across the country, and Plaintiffs believe there are millions of Class Members geographically dispersed across every state.

60.    Plaintiffs reasonably believe the millions of Class Members' identities can be ascertained from sales records in the possession of Class Members, Defendants and/or third parties, including retail sellers.

61.    Plaintiffs' claims are typical of the claims of other Class Members. Plaintiffs purchased Tires directly from Defendants during the Class Period, and suffered the same kind of injury that is typical and flows from Defendants' common course of conduct.

62.    Plaintiffs and Class Members have sustained damages during the Class Period as a result of purchasing Tires at supracompetitive prices.

63.    Plaintiffs will fairly and adequately protect the interests of the Classes and/or Subclasses, understand their obligations to the Classes and/or Subclasses, and have retained competent and experienced counsel with the resources to litigate the case.

64.    Questions of law or fact common to the Class arising from Defendants' unlawful conduct include, but are not limited to:

> (a)  Whether Defendants contracted, combined, and/or conspired with one another to raise, fix, maintain, and/or stabilize the price of Tires sold in the United States at any time during the Class Period;
>
> (b)  The identity of the participants in the alleged conspiracy;
>
> (c)  The duration of the alleged conspiracy;

(d) Whether Defendants' conduct caused the prices of Tires to be higher than the competitive level;

(e) Whether Plaintiffs and Class Members are entitled to injunctive relief, and if so, the nature of such relief; and

(f) Whether Plaintiffs and Class Members were injured by Defendants' conduct, and, if so, the appropriate measure of damages.

65.    These and other questions of fact and law are common to the Class and predominate over any question affecting Class Members individually.

66.    A class action is superior to other methods for the fair and efficient adjudication of this controversy. The prosecution of the claims alleged herein as a class action will eliminate the risk of inconsistent or varying adjudications or repetitive litigation. There will be no material difficulty in the management of this action as a class action.

## VIII.    TOLLING OF THE STATUTES OF LIMITATIONS

67.    Class Member purchases of Tires within four years prior to the filing of this Complaint are not barred by the applicable four-year statutes of limitations; the statutes are not required to be tolled for these claims to be actionable.

68.    Plaintiffs and Class Members did not know and could not have known of Defendants' illegal conduct until the European Commission announced dawn raids on tire manufacturers on January 30, 2024. Until the EC's announcement, Plaintiffs and the Classes had no reason to believe that they paid prices for Tires that were affected by Defendants' illegal conduct, and thus had no duty until then to investigate the claims set forth in this Complaint. Plaintiffs exercised appropriate due diligence under the circumstances. They lacked the ability to discover that the Tire prices they were paying were higher than they should have been because of the anticompetitive or unfair conduct, and they had little choice but to pay Defendants' supracompetitive prices when they needed Tires.

69.    Defendants engaged in affirmative acts that were designed to mislead and conceal their illegal conduct. Defendants repeatedly concealed their agreement stating that price increases were instead due to "changing business dynamics and rising costs of raw materials,"[68] "changing market dynamics in the industry,"[69] "higher price of raw materials and changing market conditions,"[70] and "increased business costs and other market dynamics."[71]

70.    Plaintiffs' claims accrue each time they suffered injury: each time they paid prices for Tires that were higher than they would have paid for Tires absent Defendants' unlawful conduct. Each sale of Tires at artificially inflated prices constitutes an overt act in furtherance of Defendants' unlawful conspiracy.

71.    Thus, to the extent that tolling is necessary to advance some or all of the claims alleged by Plaintiffs and the members of the Classes, any statutes of limitations did not begin to run and have been tolled until at least January 30, 2024, pursuant to the injury-discovery rule and the doctrine of fraudulent concealment.

## IX.    CLAIMS FOR RELIEF

### A.    COUNT ONE – VIOLATION OF THE SHERMAN ACT, 15 U.S.C. § 1, 3 – DECLARATORY AND INJUNCTIVE RELIEF

**(Against All Defendants on Behalf of Plaintiffs and the Injunctive Relief Class)**

72.    Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

73.    Defendants entered into and engaged in a continuing combination, conspiracy or agreement to unreasonably restrain trade or commerce in violation of Sections 1 and 3 of the

---

[68]Mod. Tire Dealer, *supra* note 27
[69] Mod. Tire Dealer, *supra* note 28
[70] Mod. Tire Dealer, *supra* note 29
[71] Mod. Tire Dealer, *supra* note 30

Sherman Act (15 U.S.C. § 1, 3) by colluding to fix—and raise—the price of Tires sold within the United States.

74.     Defendants' activities constitute a *per se* violation of Section 1 of the Sherman Act.

75.     Defendants' anticompetitive and unlawful conduct has proximately caused injury to Plaintiffs and members of the Injunctive Relief Class by restraining competition and thereby raising, maintaining and/or stabilizing the price of Tires at levels above what would have occurred if competition had prevailed.

76.     Defendants continue to assert that their conduct was legitimate. The fact that the conduct alleged may have ceased at some point does not mean that Defendants will not engage in similar types of price-fixing in the future.

77.     Plaintiffs and the Injunctive Relief Class seek equitable and injunctive relief pursuant to § 16 of the Clayton Act, 15 U.S.C. § 26, and other applicable law, to correct for the anticompetitive market effects Defendants' unlawful conduct caused, and other relief as appropriate to prevent similar anticompetitive conduct from reoccurring in the future.

**B.     COUNT TWO – VIOLATION OF STATE ANTITRUST LAWS**

**(Against All Defendants on Behalf of Plaintiffs and the Damages Class)**

78.     Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

79.     Plaintiffs bring this cause of action on behalf of themselves and the Damages Class or, in the alternative, the Antitrust Subclass.

80.     At all times relevant, Defendants engaged in a combination, conspiracy, or agreement, the purpose and effect of which was fixing the price of Tires sold in the United States. This was an unreasonable restraint of trade or commerce that ultimately injured competition and Plaintiffs.

81.     Plaintiffs have been injured by Defendants' unlawful price-fixing by being denied benefits of competition, being deprived the opportunity to pay for competitively priced Tires, and by paying higher prices than they would have had Defendants not engaged in price fixing. These injuries are the type of harm that state antitrust laws were designed to prevent and are the result of Defendants' unlawful conduct.

82.     Defendants' unlawful conduct was targeted towards and/or occurred within all of the states whose laws permit an indirect purchaser to pursue a claim for damages for anticompetitive conduct.

83.     Defendants' conduct violated the following state antitrust laws:

A.  Ariz. Rev. Stat. § 44-1401, et seq., with respect to purchases in Arizona by members of the Damages Class;

B.  Cal. Bus. Code § 16700, et seq., and Cal. Bus. Code §§ 17200, et seq., with respect to purchases in California by members of the Damages Class;

C.  Colo. Rev. Stat. § 6-4-101, et seq., with respect to purchases in Colorado by members of the Damages Class;

D.  Conn. Gen. Stat. § 35-24, et seq., with respect to purchases in Connecticut by members of the Damages Class;

E.  D.C. Code Ann. § 28-4501, et seq., with respect to purchases in the District of Columbia by members of the Damages Class;

F.  Fla. Stat. § 501.201 et seq., with respect to purchases in Florida by members of the Damages Class;

G.  740 Ill. Comp. Stat. 10/1 et seq., with respect to purchases in Illinois by members of the Damages Class;

H.  Iowa Code § 553.1, et seq., with respect to purchases in Iowa by members of the Damages Class;

I.  Kan. Stat. Ann. § 50-101, et seq., with respect to purchases in Kansas by members of the Damages Class;

J.  Me. Rev. Stat. Ann. 10 § 1101, et seq., with respect to purchases in Maine by members of the Damages Class;

K.  Md. Code Ann., Com. Law § 11-204(a), et seq., with respect to purchases in Maryland by members of the Damages Class;

L.  Mich. Comp. Laws Ann. § 445.772, et seq., with respect to purchases in Michigan by members of the Damages Class;

M.  Minn. Stat. § 325D.49, et seq., with respect to purchases in Minnesota by members of the Damages Class;

N.  Miss. Code Ann. § 75-21-1 et seq., with respect to purchases in Mississippi by members of the Damages Class;

O.  Neb. Code Ann. § 59-801, et seq., with respect to purchases in Nebraska by members of the Damages Class;

P.  Nev. Rev. Stat. Ann. § 598A, et seq., with respect to purchases in Nevada by members of the Damages Class;

Q.  N.M. Stat. Ann. § 57-1-1, et seq., with respect to purchases in New Mexico by members of the Damages Class;

R.  N.Y. Gen. Bus. Law § 340, et seq., with respect to purchases in New York by members of the Damages Class;

S.  N.C. Gen. Stat. § 75-1, et seq., with respect to purchases in North Carolina by members of the Damages Class;

T.  N.D. Cent. Code § 51-08.1-01, et seq., with respect to purchases in North Dakota by members of the Damages Class;

U.  Or. Rev. Stat. § 646.705, et seq., with respect to purchases in Oregon by members of the Damages Class;

V.  P.R. Laws tit. 10 § 257, et seq., with respect to purchases in Puerto Rico by members of the Damages Class;

W.  R.I. Gen. Laws § 6-36-1 et seq., with respect to purchases in Rhode Island by the Damages Class;

X.  S.D. Codified Laws Ann. § 37-1-3, et seq., with respect to purchases in South Dakota by members of the Damages Class;

Y.  Utah Code § 76-10-3101 et seq., with respect to purchases in Utah by members of the Damages Class;

Z.  Vt. Stat. Ann. tit. 9, § 2453, et seq., with respect to purchases in Vermont by members of the Damages Class;

AA.  W.Va. Code § 47-18-1, et seq., with respect to purchases in West Virginia by members of the Damages Class; and

BB.  Wis. Stat. § 133.01, et seq., with respect to purchases in Wisconsin by members of the Damages Class, in that the actions alleged herein substantially affected the people of Wisconsin.

**C.     COUNT THREE – VIOLATION OF STATE CONSUMER PROTECTION ACTS**

**(Against All Defendants on Behalf of Plaintiffs and the CPA Class)**

84.     Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

85.     Plaintiffs bring this action on behalf of themselves and Members of the CPA Class (or, in the alternative, each of the state CPA subclasses).

**1.     Colorado**

86.     Plaintiffs and the Colorado Members of the CPA Class are consumers within the meaning of Colorado Consumer Protection Act (the "CCPA"). Colo. Rev. Stat. Ann. § 6-1-113(1)(a).

87.     The CCPA prohibits deceptive trade practices, which include "knowingly or recklessly engag[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice." Colo. Rev. Stat. Ann. § 6-1-105(1)(rrr).

88.     Defendants engaged in unfair methods of competition and/or acts or practices by fixing the price of Tires in violation of § 1 and 3 of the Sherman Act. Defendants' price-fixing offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Defendants' violations present a continuing risk to consumers. Defendants' unlawful acts and practices affect the public interest.

89.     Plaintiffs and the Colorado Members of the CPA Class were damaged and injured by Defendants' unlawful and unfair methods of competition and practices in violation of the CCPA. Plaintiffs paid artificially high prices as a result of Defendants' scheme to fix Tire prices.

90.     Defendants' conduct was intentional and their violations were knowing and/or willful. Defendants knew or should have known that their conduct was in violation of the CCPA.

91.    Defendants' illegal price-fixing allowed them to charge artificially high prices for Tires and damaged and injured Plaintiffs and the Colorado Members of the CPA Class.

92.    Plaintiff and the Colorado Members of the CPA Class seek all remedies available under the CCPA, including an order enjoining Defendants' unfair methods of competition and/or unfair acts and practices; attorneys' fees, costs; and any other just and proper relief available under the CCPA.

**2.    Florida**

93.    Plaintiffs and the Florida Members of the CPA Class are "consumers" within the meaning of the Florida Deceptive and Unfair Trade Practices Act (the "FDUPTA"). Fl. Stat. Ann. § 501.203(7).

94.    Plaintiffs and the Florida Members of the CPA Class are "persons" within the meaning of the FDUPTA's provision authorizing actions for damages "by a person who has suffered a loss as a result of a violation" of the FDUPTA. Fl. Stat. Ann. § 501.211(2).

95.    Defendants are engaged in "trade or commerce" within the meaning of the FDUPTA. Fl. Stat. Ann. § 501.203(8).

96.    The FDUPTA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fl. Stat. Ann. § 501.204(1).

97.    Defendants engaged in unfair methods of competition and/or acts or practices by fixing the price of Tires in violation of § 1 of the Sherman Act. Defendants' price-fixing offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Defendants' violations present a continuing risk to consumers. Defendants' unlawful acts and practices affect the public interest.

98.    Plaintiffs and the Florida Members of the CPA Class were damaged and injured by Defendants' unlawful and unfair methods of competition and practices in violation of the FDUPTA. Plaintiffs paid artificially high prices as a result of Defendants' scheme to fix Tire prices.

99.    Defendants' conduct was intentional and their violations were knowing and/or willful. Defendants knew or should have known that their conduct was in violation of the FDUPTA.

100.    Defendants' illegal price-fixing allowed them to charge artificially high prices for Tires and damaged and injured Plaintiffs and the Florida Members of the CPA Class.

101.    Plaintiff and the Florida Members of the CPA Class seek all remedies available under the FDUPTA, including an order enjoining Defendants' unfair methods of competition and/or unfair acts and practices; damages as allowed; attorneys' fees, costs; and any other just and proper relief available under the FDUPTA.

**3.    Illinois**

102.    Plaintiffs and the Illinois Members of the CPA Class are "consumers" within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"). 815 Ill. Comp. Stat. Ann. 505/1.

103.    Plaintiffs and Illinois Members of the CPA Class are "persons" within the meaning of ICFA's provision authorizing actions for damages by "Any person who suffers actual damage as a result of a violation of this Act…" 815 Ill. Comp. Stat. Ann. 505/10a.

104.    Defendants are engaged in "trade or commerce" within the meaning of the ICFA. 815 Ill. Comp. Stat. Ann. 505/1.

105.    The ICFA protects consumers against fraud, unfair methods of competition, and other unfair and deceptive business practices.

106.    Defendants engaged in unfair methods of competition and/or acts or practices by fixing the price of Tires. Defendants' price-fixing offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Defendants' violations present a continuing risk to consumers. Defendants' unlawful acts and practices affect the public interest.

107.    Plaintiffs and the Illinois Members of the CPA Class were damaged and injured by Defendants' unlawful and unfair methods of competition and practices in violation of the ICFA. Plaintiffs paid artificially high prices as a result of Defendants' scheme to fix Tire prices. But for Defendants' price-fixing, Plaintiffs would have benefitted from a competitive market and Plaintiffs would not have suffered injury by paying artificially high prices.

108.    Defendants' conduct was intentional and their violations were knowing and/or willful. Defendants knew or should have known that their conduct was in violation of the ICFA.

109.    Defendants' illegal price-fixing allowed them to charge artificially high prices for Tires and damaged and injured Plaintiffs and the Illinois Members of the CPA Class.

110.    Plaintiff and the Illinois Members of the CPA Class seek all remedies available under the ICFA, including an order enjoining Defendants' unfair methods of competition and/or unfair acts and practices; damages as allowed; attorneys' fees, costs; and any other just and proper relief available under the ICFA.

**4.    Michigan**

111.    Plaintiffs and the Michigan Members of the CPA Class are "persons" within the meaning of the Michigan Consumer Protection Act (the "MCPA"). Mich. Comp. Laws Ann. § 445.902(1)(d).

112.    Defendants are engaged in the conduct of "trade or commerce" within the meaning of the MCPA. Mich. Comp. Laws Ann. § 445.902(1)(g).

113.    The MCPA declares "[u]nfair, unconscionable, or deceptive methods, acts or practices in the conduct of any trade or commerce are unlawful." Mich. Comp. Laws Ann. § 445.903.

114.    Defendants engaged in unfair, unconscionable and/or deceptive methods, acts, and/or practices by fixing the price of Tires. Defendants charged the consumer prices grossly in excess of the price at which similar property is sold. Defendants' price-fixing offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Defendants' violations present a continuing risk to consumer and Michigan Members of the CPA Class. Defendants' unlawful acts and practices affect the public interest.

115.    Plaintiffs and the Michigan Members of the CPA Class suffered loss as a result of Defendants' unfair, unconscionable, and/or deceptive methods, acts, and/or practices in violation of the MCPA. Plaintiffs and the Michigan Members of the CPA Class paid artificially high prices as a result of Defendants' scheme to fix Tire prices. Plaintiffs and the Michigan Members of the CPA Class suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' violation of the MCPA.

116.    Defendants' conduct was intentional and their violations were knowing and/or willful. Defendants knew or should have known that their conduct was in violation of the MCPA.

117.    Defendants' illegal price-fixing allowed them to charge artificially high prices for Tires and damaged and injured Plaintiffs and the Michigan Members of the CPA Class.

118.    Plaintiff and the Michigan Members of the CPA Class seek all remedies available under the MCPA, including an order enjoining Defendants' unfair, unconscionable, and/or deceptive methods, acts, and/or practices; damages as allowed; attorneys' fees, costs; and any other just and proper relief available under the MCPA.

## X.     PRAYER FOR RELIEF

119.     WHEREFORE, Plaintiffs respectfully request judgment against Defendants and the following relief:

A.     Determine that this action may be maintained as a class action, with Plaintiffs serving as Class Representatives and their counsel serving as Class Counsel;

B.     Require Defendants to pay for sending notice to the certified Class;

C.     Issue an injunction to enjoin Defendants from engaging in the anticompetitive, deceptive, unfair, unconscionable, and unlawful acts and practices alleged in this Complaint;

D.     Award further injunctive relief, as the Court deems appropriate;

E.     Award compensatory damages to Plaintiffs and the proposed Classes and/or Subclasses in an amount to be established at trial;

F.     Award treble damages as permitted by law;

G.     Award pre- and post-judgment interest;

H.     Award punitive damages based on Defendants' reprehensible and deliberate conduct;

I.     Award reasonable attorneys' fees and costs; and

G.     Award all such other and further relief as may be just and proper.

## XI.     JURY TRIAL DEMANDED

120.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims asserted in this Complaint that are so triable.

DATED:    New York, New York
              April 17, 2024

                        KELLER ROHRBACK L.L.P.


                        By /s/ *Ron Kilgard*
                        Ron Kilgard
                        1140 Sixth Avenue, Ninth Floor
                        New York, NY 10036
                        Tel: (602) 230-6324
                        Fax: (602) 230-6360
                        rkilgard@kellerrohrback.com


                        Gretchen Freeman Cappio (*pro hac vice* forthcoming)
                        Ryan McDevitt (*pro hac vice* forthcoming)
                        Sydney Read (*pro hac vice* forthcoming)
                        1201 Third Avenue, Suite 3200
                        Seattle, WA 98101
                        Tel.: (206) 623-1900
                        Fax: (206) 623-3385
                        gcappio@kellerrohrback.com
                        rmcdevitt@kellerrohrback.com
                        sread@kellerrohrback.com


                        ***Attorneys for Plaintiffs***